FILED
United States Court of Appeals
Tenth Circuit

April 22, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JAMES YORK; JODIE YORK,

        Plaintiffs-Appellees,

v.

THE CITY OF LAS CRUCES,

        Defendant,

    and

CHRIS GALLEGOS; FRANK
LUCERO; GREG MARTINEZ,

        Defendants-Appellants.

No. 07-2150

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-06-683-MCA-CG)**

---

Submitted on the briefs:[*]

Jared Abrams, Senior Assistant City Attorney, Las Cruces, New Mexico, for Defendants-Appellants.

William A. Walker, Jr., P.C., Las Cruces, New Mexico, for Plaintiffs-Appellees.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Before **KELLY**, **McKAY**, and **ANDERSON**, Circuit Judges.

**ANDERSON**, Circuit Judge.

Plaintiff James York has sued the defendant police officers, Chris Gallegos, Frank Lucero, and Greg Martinez, under 42 U.S.C. § 1983, for violating his First and Fourth Amendment rights when they arrested him for saying "bitch" in a public place and used excessive force during the arrest. The police officers moved for summary judgment on the grounds of qualified immunity, arguing that their actions did not violate any of Mr. York's clearly established constitutional rights.[1] The district court denied qualified immunity with respect to Mr. York's § 1983 claims. It held that his constitutional rights to be free from the use of excessive force in effecting a warrantless arrest without probable cause were clearly established at the time of the incident and that disputed issues of material

---

[1] Mrs. York also asserted a violation of her own constitutional rights. The district court granted the police officers' motion for summary judgment on her claim and also granted the City of Las Cruces's motion for summary judgment against both plaintiffs.

facts precluded summary judgment.[2]   The officers appeal from the denial of

qualified immunity.  For the reasons stated below, we affirm the district court.

**I**

On the afternoon of August 14, 2004, the Yorks were driving through the

parking lot of a Target store in Las Cruces, New Mexico.  Mr. York, the driver,

saw a vehicle leaving its space and he stopped to let the driver back out so he

could take the spot.  However, before he could pull in, another vehicle pulled into

the space.  After he had driven past the space, he said either "bitch" or "what a

bitch," in apparent reference to the female driver who had taken the space.  At the

time he said "bitch," Mr. York was driving past Officer Gallegos, who was

verifying handicap placards on vehicles.

According to Officer Gallegos, not only did he overhear Mr. York say

"bitch," but so did a man and his five-year-old child:  "[They both] made eye

contact with me immediately after [Mr. York] shouted 'bitch. . . .'  My

impression was that they were making eye contact due to the shouting."  Stip.

---

[2]    Mr. York argues that his constitutional rights were also violated because he was arrested in retaliation for the exercise of his First Amendment rights.  He raised this theory in the district court in response to the police officers' motion for summary judgment, Stip. App. at 102-04, and the officers discussed it in their reply.  *Id*. at 191-93.  Although the district court did not discuss the issue in its order, the parties raise it again on appeal.  Aplee. Br. at 27-29, Aplts. Reply Br. at 6-8.  "Because the district court did not address this argument, we decline to do so for the first time on appeal," *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1133 n.11 (10th Cir. 2003), and the parties may litigate the issue in district court.

App. at 55. He read their eyes as urging him to take action. To that end, Officer Gallegos pulled up behind the Yorks' vehicle, got off his motorcycle, and confronted Mr. York as he got out of his car and started walking towards the store. Mr. York claims that Officer Gallegos asked in an angry, loud voice, "'who were you calling a bitch back there?'" *Id*. at 138. Mr. York told Officer Gallegos "that it wasn't him," *id*., and "it was none of his business[.]" *Id*. When Officer Gallegos suggested that he could arrest him for causing a disturbance, they began to debate the legality of Mr. York's conduct. At some point, Officer Gallegos turned on his belt tape, which recorded some, but not all, of what was said. Mr. York claims that Officer Gallegos became increasingly agitated when he refused to agree with his interpretation of the law, "yelling and butting me with his chest[.]" *Id*. For his part, Officer Gallegos contends that Mr. York had become "sufficiently belligerent that [he] decided that it would be advisable to call for backup." *Id*. at 55. Officers Lucero and Martinez arrived on the scene shortly thereafter in response to the call for assistance.

Officers Gallegos and Lucero stepped aside for a conversation outside of the Yorks' hearing in which they discussed arresting Mr. York. According to Officer Gallegos, Officer Lucero agreed that there was probable cause to arrest Mr. York for disorderly conduct because he "shouted a profanity in a crowded public area, causing at least three people to react." *Id*. at 56. But instead of using the arrest technique he learned in police training, i.e., "Sir, I need you to turn

around. Place your hands behind your back. You're being placed under arrest for such and such[,]" *id*. at 122, Officer Gallegos decided to use his own arrest technique in which he grabs and handcuffs the suspect before explaining that he is under arrest.

This unconventional arrest technique backfired, however, because Mr. York reflexively drew back his arm back when Officer Gallegos grabbed him without warning. Officer Gallegos interpreted the movement as an attempt to evade arrest and executed an arm-bar takedown, in which Mr. York struck his head and shoulder on the pavement. Mr. York claims that an unidentified officer put a knee in the middle of his back while he was lying on the ground. Officer Martinez then placed a Taser on the back of Mr. York's neck and threatened to shock him if he did not untuck his arms from underneath his body. Dazed and confused from the blow to his head, he told the officers: "I can't. I think you broke my arm." *Id*. at 135. Eventually, Mr. York was handcuffed and taken to jail where he was charged with disorderly conduct and evading a police officer.[3] He allegedly incurred at least $80,000 in medical bills as a result of his injuries.

## II

Once a defendant invokes the defense of qualified immunity, the plaintiff must meet a two-part burden to avoid summary judgment: "(1) that the

---

[3] The case against Mr. York was dismissed on a directed verdict at the conclusion of the prosecution's case.

defendant's actions violated a constitutional or statutory right and (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Serna v. Colo. Dep't of Corrs*., 455 F.3d 1146, 1150 (10th Cir. 2006) (quotation marks omitted). "In resolving questions of qualified immunity, courts are required to resolve a 'threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.'" *Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007) *quoting Saucier v. Katz*, 533 U.S. 194, 201 (2001). If no violation of a constitutional right is established, "there is no necessity for further inquiries. . . . On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201.

Generally, we lack jurisdiction to review the denial of summary judgment motions. However, because qualified immunity entitles the defendant to avoid litigation, "we have jurisdiction [on appeal] to review purely legal questions that arise from the denial of qualified immunity." *Perez v. Ellington*, 421 F.3d 1128, 1131 (10th Cir. 2005). Our jurisdiction also extends to situations where a defendant claims on appeal that accepting the plaintiff's version of the facts as true, he is still entitled to qualified immunity. *See e.g., Johnson v. Martin*, 195 F.3d 1208, 1214 (10th Cir. 1999) ("[I]f a defendant's appeal of the denial of a motion for summary judgment is based on the argument that, even under the

-6-

plaintiff's version of the facts, the defendant did not violate clearly established law, then the district court's summary judgment ruling is immediately appealable.").

"We review the denial of a summary judgment motion raising qualified immunity questions de novo[,]" *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001), and "construe the record in the light most favorable to the nonmoving party." *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1258 (10th Cir. 2008). As with any motion for summary judgment, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]" *Scott,* 127 S.Ct. at 1776, *Estate of Larsen*, 511 F.3d at 1259 (same).

### III

"When a warrantless arrest is the subject of a § 1983 action, the officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to make the arrest." *Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1191 (10th Cir. 2007). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (quotation marks omitted).

Qualified immunity also insulates the defendant who reasonably, albeit mistakenly, concludes that there is probable cause.  *Id.*

As to claims of excessive force, "[w]e analyze whether the force used to effectuate an arrest violates an individual's Fourth Amendment rights under the 'objective reasonableness' standard of the Fourth Amendment."  *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005), *quoting Graham v. Connor*, 490 U.S. 386, 388 (1989).  "A court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances."  *Id.*  (quotation marks omitted).  In assessing the reasonableness of the force used, a court should consider, among other things: "the alleged crime's severity, the degree of potential threat that the suspect poses to an officer's safety and to other's safety, and the suspect's efforts to resist or evade arrest."  *Id.*

Viewing the evidence in the light most favorable to Mr. York, the district court found that the facts, if proven at trial, could constitute violations of his First and Fourth Amendment rights.  The police officers argue that the court applied the wrong standard in its review of the alleged constitutional violations.  More specifically, they claim that Mr. York's story was blatantly contradicted by the audio recording of the event that proved that there was no constitutional violation.

Alternatively, they argue that the court failed to view their conduct from the vantage point of a reasonable police officer.

As to their first argument, the police officers overstate the relevance of *Scott,* in which the court found "an added wrinkle," 127 S.Ct. at 1775, in the form of an unadulterated videotape that captured the entire incident. "The videotape quite clearly contradict[ed] the version of the story told by [the plaintiff] and adopted by the [lower courts]." *Id.* The court held that a court may not adopt a "blatantly contradicted" version of the facts for summary judgment purposes. *Id*. at 1776.

By contrast, only part of the incident involving the Yorks and the police officers was captured on an audio tape, portions of which are unintelligible. Setting aside the fact that the court referenced the tape several times in its order and it is not "blatantly contradicted," *id*., by Mr. York's version of the events, the tape does not establish that the officers are entitled to summary judgment.[4]

---

[4] The remainder of the police officers' arguments concern whether or not the evidence was sufficient to demonstrate a genuine issue of fact for trial. For example, they dispute Mr. York's contention that he was taken by surprise when Officer Gallegos grabbed his arm and that he was unable to immediately untuck his arms when he was forced to the pavement by the arm-bar takedown because he was disoriented and in pain. However, we lack jurisdiction to review that portion of the district court's order denying summary judgment based on the existence of disputed material facts. *See Johnson v. Jones*, 515 U.S. 304, 313 (1995) (holding "[t]his kind of order. . . is not appealable)," *Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001) (holding that "[c]ourts of appeals clearly lack jurisdiction to review summary judgment orders deciding qualified immunity question solely on the basis of evidence sufficiency–which facts a party may, or

(continued...)

Instead, accepting Mr. York's version of the events as true, the fact finder could easily find constitutional violations.

The police officers contend that the district court failed to evaluate the reasonableness of the force used in the arrest from the vantage point of the police officers, and ignored all but one of the relevant factors used to judge the reasonableness of their conduct. To the contrary, the court's order reveals that it considered all of the relevant factors. For example, it found that "[t]here is no evidence in this case that Mr. York was attempting to evade arrest by flight, and the allegation that he was resisting arrest is disputed." Stip. App. at 237. As to the prohibition against "the 20/20 vision of hindsight," *Graham*, 490 U.S. at 396, the court held that the evidence did not involve one of those difficult situations in which the officers were "'forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation.'" Stip. App. at 238, *quoting Graham*, 490 U.S. at 396-97. Instead, Officers Gallegos and Lucero took time to confer about whether there was probable cause for the arrest. Last, setting aside the fact that the officers effectively concede that Mr. York did not pose any safety risks to them or the public, the court did not ignore this factor in its analysis. Instead, it took into account whether Officer Gallegos's arrest technique "unreasonably

---

[4](...continued)
may not, be able to prove at trial.") (quotation marks omitted).

-10-

created [a potential safety issue and] the need to use allegedly excessive force." Stip. App. at 234, *citing Medina*, 252 F.3d at 1132.

## IV

The police officers next argue that the law concerning Mr. York's right not to be arrested for saying "bitch" under these circumstances was not clearly established on the date of the arrest, August 14, 2004.[5] In particular, the officers argue that at the time of the incident no court had specifically held that the word "bitch" was not a fighting word.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "Ordinarily, we say that for a rule to be clearly established there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (internal quotation marks omitted). However, this does not mean that there must be a published case involving identical facts; otherwise we would be required to "find qualified immunity wherever we have a new fact pattern." *Id*. Instead, "a general constitutional rule can apply with obvious clarity to the

---

[5] The police officers do not dispute that the law concerning Mr. York's Fourth Amendment right to be free from the use of excessive force during an arrest was clearly established on the date of the incident.

-11-

specific conduct in question, even though such conduct has not previously been held unlawful." *Id.* (quotation marks and alterations omitted). Mindful that what, how, when, and where words are spoken will rarely involve exactly the same circumstances, we look to the "general constitutional rule." *See Id.*

Our task is to determine whether a reasonable police officer was on notice that Mr. York's use of the word "bitch" under these circumstances was not a fighting word that would give rise to probable cause to arrest him for disturbing the peace. Nearly fifteen years before this incident, we defined "fighting words [as] . . . epithets (1) directed at the person of the hearer, (2) inherently likely to cause a violent reaction, and (3) playing no role in the expression of ideas." *Cannon v. City and County of Denver*, 998 F.2d 867, 873 (10th Cir. 1993). Although the word "bitch" may be offensive to some, any reasonable police officer should have known that he could not arrest Mr. York for loudly saying this word under these circumstances. First, there is no evidence that Mr. York's comment was directed to anyone in particular, instead, he was in his vehicle when he made the remark and several parking spaces away from the space taken by the female driver.[6] Second, he did not threaten or offer a fight. Last, there is no evidence that any reasonable person would react violently to hearing this word.

---

[6] The police officers argue that Mrs. York told them that the word referred to the female driver of the vehicle that pulled into the space. The relevant point is that the undisputed evidence is that Mr. York was several parking spaces away from the space that had been taken by the woman when Officer Gallegos overheard the comment.

# V

Last, the police officers argue that even if they lacked probable cause to arrest Mr. York for speaking the word "bitch," they had probable cause to believe that he had committed the offense of disturbing the peace based on his discussion with Officer Gallegos about the legality of his conduct. LAS CRUCES, N.M. CODE § 19-87 (1988) and N.M STAT. § 30-20-1 (1978) define disturbing the peace, among other things, as "unreasonably loud . . . conduct which tends to disturb the peace." According to the officers, Mr. York's "argument [with Officer Gallegos] . . . reached levels of near shouting and drew the attention of passers-by." Aplts. Op. Br. at 39. Thus, they had probable cause to arrest [Mr. York] on *some* ground." *Id.*

We decline to review this argument because the police officers did not raise it in the district court. We exercise our discretion to review issues not raised below "only in the most unusual circumstances[] . . . [and] where the argument involves a pure matter of law and the proper resolution of the issue is certain." *United States v. Jarvis*, 499 F.3d 1196, 1202 (10th Cir. 2007) (quotation marks omitted). As such, where "findings of fact or presentation of evidence [are] required for the issue's disposition," we will not consider the issue. *Id.*

We have carefully examined the police officers' opening and reply briefs in the district court, and find no such argument. Not only does resolution of this issue involve fact-finding, the officers rejected any notion that the so-called

-13-

argument between Mr. York and Officer Gallegos gave rise to probable cause for an arrest: "The fact that [Mr. York] and Officer Gallegos engaged in an argument about the merits of the disorderly conduct charge is immaterial as to whether Gallegos had available to him such facts and circumstances as would lead a prudent person to believe that Mr. York had committed an offense." Stip. App. at 194. Having never raised this argument in the district court, they cannot raise it for the first time on appeal.

**AFFIRMED**.