**UNITED STATES COURT OF APPEALS**

**April 23, 2009**

**FOR THE TENTH CIRCUIT**

**Elisabeth A. Shumaker
Clerk of Court**

VICKIE WAUGH,
f/k/a VICKIE MAYS,

Plaintiff-Appellant,

v.

THE WILLIAMS COMPANIES, INC.
LONG TERM DISABILITY PLAN,

Defendant-Appellee.

No. 08-5123
(D.C. No. 4:07-CV-00446-CVE-SAJ)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **PORFILIO**, and **ANDERSON**, Circuit Judges.

Vickie Waugh, previously employed by The Williams Companies, Inc.

(TWC), appeals the district court's order upholding the decision of the

administrator of TWC's Long-Term Disability Plan (Plan) to terminate her

benefits. She also appeals the court's denial of her motion for new trial.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Ms. Waugh argues that the district court failed to appreciate and apply the full import of the Supreme Court's decision in *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2343 (2008). She believes *Metropolitan Life* substitutes "all of the artificial rules of evidence heretofore applied in ERISA claims review litigation for a much fairer no-nonsense review of the record as a whole." Aplt. App., Vol. 1 at 183. We hold *Metropolitan Life* is inapposite and affirm.

The Plan provides a two-tier system for the provision of benefits when an employee is "totally disabled." During the first twenty-four months following the commencement of benefits, an employee is totally disabled, by policy definition, essentially if unable to perform his or her job or some reasonable alternative employment with TWC. After the first twenty-four months, however, an employee can retain totally disabled status only if he or she is unable "to engage in any gainful occupation for which he or she is reasonably fitted by education, training or experience, as determined by the Plan Administrator. *Id*., Vol. 3 at 328. The Plan also requires participants receiving disability payments to provide current medical information at least once every two years. Failure to do so could result in termination of benefits.

Ms. Waugh, who worked for TWC for twenty-two years in various computer-related jobs, developed carpal tunnel syndrome in the 1990s. Kemper National Services, Inc. (Kemper), the claims administrator for the Plan,

determined that, effective, July 27, 1999, Ms. Waugh was totally disabled.[1] In February 2002, Kemper initiated a review of Ms. Waugh's disability claim to determine whether she was still eligible for benefits under the second tier total disability definition. After receiving updated medical documentation and obtaining a peer review from Lawrence Blumberg, M.D., Kemper sent Ms. Waugh a letter describing the doctor's findings and informing her the records she provided did not support continuance of her disability benefits. Kemper, however, granted her thirty days within which to submit additional objective test results requested by Dr. Blumberg.

Following the submission of that documentation and another review by Dr. Blumberg, Kemper informed Ms. Waugh she did not qualify for permanent disability and her benefits would be terminated. Ms. Waugh administratively appealed this finding, submitting for Kemper's consideration one more medical record and a partially favorable benefits determination by the Social Security Administration. After two more peer reviews by a second and a third physician,

---

[1] TWC's Board of Directors was responsible for appointing a Benefits Committee which, in turn, appointed an Administrative Committee to serve as the Plan Administrator. The Administrative Committee, in turn, delegated full discretionary authority to Kemper to interpret the Plan, obtain the participant information necessary to administer the Plan, make benefit determinations under the Plan, and conduct the first level of administrative appeals from those determinations. The Administrative Committee, however, retained the authority to hear and decide the second and final level of administrative appeals. The Administrative Committee was not compensated for its service and there was no evidence presented that Kemper's compensation was tied to the amount of claims approved or denied.

both of whom agreed with Dr. Blumberg's assessment, Kemper denied Ms. Waugh's first-level appeal.

Ms. Waugh then filed a second-level appeal with the Administrative Committee, but presented no additional arguments or medical records. Following further review by a fourth physician, who agreed with the other three, the Administrative Committee upheld the denial of benefits. Ms. Waugh challenged the denial of the second-level appeal, but the Administrative Committee affirmed its denial. Ms. Waugh subsequently filed her complaint for review in district court.

To consider Ms. Waugh's contention that the district court misapplied *Metropolitan Life*, we must first examine the standard of review that was applied.

> ERISA allows plaintiffs to sue in federal court to "recover benefits due . . . under the [healthcare] plan, to enforce . . . rights under the terms of the plan, or to clarify . . . rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). But the ERISA statute does not specify the judicial standard of review. The Supreme Court closed the lacuna in 1989, holding in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 . . . (1989), that a denial of benefits challenged under § 1132(a)(1)(B) "is to be reviewed under a *de novo* standard, unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115 . . . . If the plan does explicitly confer discretionary authority on an administrator with so-called *Firestone* language, courts must review benefit determinations under an "arbitrary and capricious" standard.

*Geddes v. United Staffing Alliance Employee Med. Plan*, 469 F.3d 919, 923 (10th Cir. 2006) (alteration in first sentence in original). Recognizing that the

-4-

district court reviewed the benefits decision in this case under the arbitrary and capricious standard, Ms. Waugh argues the court committed an error of law by failing to apply *Metropolitan Life*, which she interprets as requiring de novo review of the denial of benefits. Our review is therefore plenary. *Sandoval v. Aetna Life & Cas. Inc. Co.*, 967 F.2d 377, 380 (10th Cir. 1992) (holding that this Court has plenary review regarding a district court's legal conclusions).

There are two problems with this approach. First, the issue decided in *Metropolitan Life* was how a court should review a discretionary benefit decision of a plan administrator when that individual has a conflict of interest 128 S. Ct. at 2350. The Court did not broaden the standard of review as argued by Ms. Waugh. Second, in the district court Ms. Waugh not only failed to contend the Plan Administrator was conflicted, she also conceded that fact.

Not to be denied, Ms. Waugh asserts: "[t]hat concession now appears ill advised and it may be proper to remand this case to allow Plaintiff to develop whether the Defendant is operating under [such a conflict of interest]." Aplt. Opening Br. at 52. In effect, she asks us to overlook the impediment to her appeal. However, "[w]e exercise our discretion to review issues not raised below 'only in the most unusual circumstances[] . . . [and] where the argument involves a pure matter of law and the proper resolution of the issue is certain.'" *York v. City of Las Cruces*, 523 F.3d 1205, 1212 (10th Cir. 2008) (all but first alteration in original) (quoting *United States v. Jarvis*, 499 F.3d 1196, 1202 (10th Cir.

-5-

2007)).  Because this case does not meet those standards, we reject her request.

But were we to overlook the absence of evidence the Plan Administrator was

burdened by a conflict of interest, Ms. Waugh still would not prevail.

Essentially, Ms. Waugh contends that after *Metropolitan Life* a reviewing

court must give no deference to a plan administrator's discretionary benefits

determination.  She assumes the Court's concern with a fiduciary's conflict of

interest provides a license for courts to review *all* the beneficiary's medical

evidence and reach a *de novo* determination whether benefits should have been

granted.  According to Ms. Waugh, no longer may decisions "be upheld even if on

the lower end of reasonableness."  Aplt. Opening Br. at 51.  She asserts

*Metropolitan Life* vests courts with authority to reverse a plan administrator's

decision even if that decision is reasonable and supported by substantial

evidence.[2]  The Court had no intention of mandating *de novo* review of these

discretionary decisions.  *See Metro. Life Ins. Co.*, 128 S. Ct. at 2350 (stating that

*Firestone* did not change the standard of review "from deferential to *de novo*" and

that the Court would not "overturn *Firestone* by adopting a rule that in practice

could bring about near universal review by judges *de novo*").  We therefore affirm

_____

[2]     Creatively, she posits that the level of deference a court should give a plan
administrator's decision is the same deference that a football official reviewing an
instant replay in a booth should give to a call made by the on-the-field official.
Aplt. Reply Br. at 19-20.  That is, of course, no deference.

the district court's order upholding the Plan Administrator's termination of benefits and turn to the court's denial of Ms. Waugh's motion for new trial.

> A district court's denial of a motion for a new trial is reviewed for an abuse of discretion. The ruling will be reversed only if the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. When the district court's decision turns on an issue of law, however, its determination on that question is reviewed *de novo*.

*Skaggs v. Otis Elevator Co.*, 164 F.3d 511, 514 (10th Cir. 1998) (citations and quotation omitted). Under Federal Rule of Civil Procedure 59(a)(1)(B), following a nonjury trial the district court may grant a new trial on some or all of the issues "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Further, under Rule 59(a)(2), "[a]fter a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." The district court, observing that "[t]he purpose of a Rule 59(a)(2) motion 'is to correct manifest errors of law or fact, or, in some limited situations, to present newly discovered evidence,'" Aplt. App., Vol. 1 at 224 (quoting *Lyons v. Jefferson Bank & Trust*, 793 F. Supp. 989, 991 (D. Colo. 1992)), denied her motion because Ms. Waugh "is not seeking to [do either], but instead is attempting to advance arguments she could have readily asserted before." Aplt. App., Vol. 1 at 226. Because Ms. Waugh makes no argument that Rule 59(a)(2) gives a district court authority to address issues

-7-

not previously raised, we see no abuse of discretion in the denial of the motion for new trial.

The judgment of the district court is AFFIRMED.

Entered for the Court


John C. Porfilio
Circuit Judge

08-5123, *Waugh v. The Williams Company*

**LUCERO, J**., joining in the result.

My reading of the plaintiff's claims, as discussed in the parties' briefs, differs from that of my respected majority colleagues.  That disagreement does not affect the ultimate disposition of the case.  I join in the result.