EBEL, Circuit Judge,
dissenting.
I agree with the majority opinion’s Sections I and II, as well as the opinion’s general discussion of the law pertaining to Fourth Amendment excessive force claims. Further, I would conclude, as the majority assumes, that under the circumstances of this case Plaintiff Ricky Lee Thomas was seized when Defendant John Durastanti shot him. But I cannot .agree with the remainder of the majority opinion and would, instead, affirm the district court’s decision to deny Durastanti qualified immunity because there are genuinely disputed material facts that a jury, and not this court, must resolve.
Thomas alleged that Durastanti seized him using excessive force. “The reasonableness of the use of force depends not only on whether the officers were in danger at the precise moment , that they used force, but also on whether the officers’ own reckless or deliberate conduct during the seizure unreasonably created the need to use such force.” Jiron v. City of Lakewood, 392 F.3d 410, 415 (10th Cir.2004) (quotation omitted). In light of that, Thomas’ claim was two-fold: 1) Durastanti used excessive force when, although in no immediate danger, he deliberately stepped in front of the Lincoln and began firing into it in an effort to stop the Lincoln’s flight. And 2) even if the use of deadly force was reasonable at the moment Durastanti first fired into the Lincoln, his own reckless or deliberate conduct in approaching the Lincoln with his gun drawn, while wearing plain clothes, having just gotten out of an unmarked Ford Explorer, and never identifying himself as a law enforcement officer, precipitated the later need to use deadly force by creating cir *672 cumstances in which the Lincoln’s driver, Almario Smith, reasonably believed he was about to be robbed or assaulted. We need address only Thomas’ first theory in order to affirm the denial of qualified immunity.
In defense of Thomas’ allegation that Durastanti, not being in any immediate danger, deliberately stepped into the Lincoln’s path and began shooting in order to stop the Lincoln’s flight, Durastanti asserts, to the contrary, that he was rushing around the back of his Explorer to check on his partner and in doing so found himself confronted by the Lincoln accelerating towards him as it headed out of the parking lot. Being only a car’s length away from the Lincoln and unable to get out of its way, Durastanti feared for his life and therefore shot at the Lincoln in self defense.
Confronted with these divergent stories, the district court held that factual disputes material to this claim precluded entering summary judgment for Durastanti based upon qualified immunity, specifically determining that “[t]he actions of all the individuals involved in this incident are in dispute.” (Aplt.App. at 780.) We do not have jurisdiction, in this interlocutory appeal, to consider the propriety of the district court’s determination that there remain disputed issues of material fact. See Couture v. Bd. of Educ. of Albuquerque Pub. Sck, 535 F.3d 1243, 1249 (10th Cir.2008). Nonetheless, the majority concludes we can ignore these factual disputes because they are either not genuine or not material to Thomas’ claim. I am not persuaded.
The majority is able to avoid these factual disputes only by focusing on less relevant aspects of the incident and avoiding entirely the most relevant disputed facts. In addressing Thomas’ first theory of recovery, the majority focuses almost exclusively on the speed at which the Lincoln was traveling out of the parking lot. While that is relevant to Thomas’ claim, it is certainly not the most crucial disputed fact.
Moreover, in disregarding the factual dispute regarding the Lincoln’s speed, the majority misapplies Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). In determining that there was a factual dispute as to how fast the Lincoln was moving, the district court noted that Thomas had evidence indicating that the Lincoln was moving very slowly when it hit Durastanti. Relying on Scott, the majority opinion concludes that there is no genuine factual dispute about the speed the Lincoln was traveling because, contrary to the district court’s determination, the video of the incident taken from the state trooper’s patrol car conclusively established that the Lincoln “was moving deliberately out of the parking lot.”[10] (Op. at 664-65.)
Scott provides an exception to the usual rule that a court, in considering a motion for summary judgment based upon qualified immunity, must accept the facts as the plaintiff has alleged and supported them. See 550 U.S. at 379-81, 127 S.Ct. 1769. Scott instead permits a court to reject the plaintiffs version of events when the record “blatantly contradict[s]” that version. See id. at 380,127 S.Ct. 1769.
*673 In this case, however, the video does not “blatantly contradict” Thomas’ version of events. The video shows only a very small portion of the thirty-seven-second incident occurring in the gas station parking lot.[11] The video gives the viewer a brief glimpse of the Lincoln turning into the Valero station, ten seconds ahead of Trooper Spencer. But because the trooper was not able to pull into the station and park directly behind the Lincoln, the video does not record any of the events that occurred in that parking lot up until the state trooper begins to follow the Lincoln out into the street, thirty-five seconds later. And even then the video shows only the back of the Lincoln as it moves around the ATF agents’ Explorer. Further, because the Explorer is parked between the trooper’s car and the Lincoln, the video does not show Durastanti with any clarity until he rolls off the left front of the Lincoln a few seconds later. So, yes, at that moment a viewer can gauge the speed of the Lincoln. But the video does not show the speed of the Lincoln at the time Durastanti stepped in front of it, or at the time he first shot into it. More relevant to Thomas’ claim, the video does not show how Durastanti got in front of the Lincoln or his position when he shot into the car. The district court determined that there were genuine factual disputes as to those critical circumstances. And the video does not provide a clear basis to disregard that determination. See York v. City of Las Cruces, 523 F.3d 1205, 1210-11 (10th Cir.2008) (declining to disregard plaintiffs version of events based upon audiotape that captured only part of the relevant events).
The majority opinion further concludes that it is immaterial that the video does not show Durastanti stepping into the path of the Lincoln, because it is a “[gjiven that [he] undoubtedly was in the Lincoln’s path.” But how he got in the Lincoln’s path is a fact critical to Thomas’ theory of recovery. The majority further assures us that, although the video does not show where Durastanti was when he first shot into the car, we can use “logic” to surmise where he must have been. That fact, too, is crucial to Thomas’ claim and it remains *674 disputed. The majority’s use of the video to disregard this factual dispute and instead infer what must have happened is an improper application of Scott, see York, 523 F.3d at 1210-11, particularly on interlocutory appeal from the district court’s determination that disputed material factual disputes precluded summary judgment based upon qualified immunity.
The majority thus errs in relying on Scott to disregard a genuine factual dispute regarding the speed of the Lincoln when Durastanti shot into the car. Moreover, the majority does not even address the district court’s determination that there were genuine disputes regarding the facts most material to Thomas’ claim, how Durastanti got in front of the Lincoln and where he was when he first shot into that car. We do not have jurisdiction to review that determination. See Couture, 535 F.3d at 1249. And the district court did not err in determining that a reasonable jury could find that Durastanti acted unreasonably in light of the facts as Thomas has alleged them and as a reasonable officer in Durastanti’s position would have perceived them. I would, therefore, affirm the district court’s decision to deny Durastanti qualified immunity.[12]

. It is not obvious that the fact that the Lincoln was traveling "deliberately” out of the parking lot is contrary to the district court’s determination that Thomas had evidence that the Lincoln was moving very slowly. One acts deliberately by acting in a deliberate manner, "characterized by or resulting from slow careful consideration of effects and consequences,” and in a "slow, unhurried and steady manner.” Webster’s Third Int’l Dictionary, 596 (1986). A person could surely drive both deliberately and very slowly.

. In this respect, this case is very different from Scott. In Scott, Victor Harris sued Deputy Scott alleging the officer used excessive force to stop Harris after Harris refused to stop when the officer tried to pull him over for speeding. See 550 U.S. at 374-76, 127 S.Ct. 1769. For six minutes Deputy Scott pursued Harris ten miles down a two-lane road, until Harris lost control of his vehicle after Scott bumped his car from behind. See id. at 374-75, 127 S.Ct. 1769. Harris alleged that during this chase, he remained in control of his vehicle, slowed for turns and intersection, used his turn signal and did not otherwise present an actual threat to other motorists or pedestrians. See id. at 378-79, 127 S.Ct. 1769. Ordinarily, a court considering a motion for qualified immunity would have to accept that version of the events. See id. at 378, 127 S.Ct. 1769. But in Scott, a video camera in Deputy Scott's vehicle recorded the entire six-minute chase. See id. at 378-79, 127 S.Ct. 1769. And that video showed "quite a different story,” depicting Harris driving "shockingly fast,” running red lights, swerving around more than a dozen cars, crossing the yellow line and forcing cars in both directions to drive onto the shoulder of the road to avoid Harris. Id. at 379, 127 S.Ct. 1769. It was under these circumstances that the Supreme Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.” Id. at 380, 127 S.Ct. 1769. In Scott, then, because Harris' "version of events [wa]s so utterly discredited by the record that no reasonable jury could have believed him,” the court did not have to accept his version of the events. Id. Instead, the court considering Deputy Scott’s motion for summary judgment based upon qualified immunity “should have viewed the facts in the light depicted by the videotape.” Id. at 380-81, 127 S.Ct. 1769.

. I would also conclude, contrary to the majority, that the district court correctly determined that the law governing excessive force claims was clearly established. In addressing an excessive force claim,
[a]n officer using force in the course of a seizure of a citizen is entitled to qualified immunity unless the level of force violated clearly established Fourth Amendment law.... This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.
Thomson v. Salt Lake County, 584 F.3d 1304, 1313 (10th Cir.2009) (quotation, citations omitted). Said another way, "an officer’s violation of the Graham [v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)] reasonableness test is a violation of clearly established law if there are no substantial grounds for a reasonable officer to conclude that there was legitimate justification for acting as []he did.” Buck v. City of Albuquerque, 549 F.3d 1269, 1291 (10th Cir.2008) (quotations omitted).
It was clearly established by January 2006 that the use of "deadly force is justified only if a reasonable officer in the officer’s position would have had probable cause to believe that there was a threat of serious physical harm to himself or others.” Cordova v. Aragon, 569 F.3d 1183, 1192 (10th Cir.2009) (citing, e.g., Graham, 490 U.S. at 396, 109 S.Ct. 1865), cert. denied, — U.S.-, 130 S.Ct. 1146, L.Ed.2d-(2010). Again viewing the evidence in the light most favorable to Thomas, it was clearly established at that time that it was unreasonable to step deliberately in front of the Lincoln and use deadly force to try to stop its flight from a traffic stop. Therefore, because a reasonable jury could find that Durastanti’s conduct was objectively unreasonable, the district court did not err in concluding that Thomas had established a claim that Durastanti violated Thomas' clearly established Fourth Amendment rights.