FILED
United States Court of Appeals
Tenth Circuit

**June 8, 2011**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MAURICE WHITE, JR.,

        Plaintiff-Appellee,

v.

DANIEL MARTIN, individually,
while acting under color of law on
behalf of the State of Oklahoma,

        Defendant-Appellant,

    and

KEVIN L. WARD, individually, while
acting under color of law on behalf of
the State of Oklahoma,

        Defendant.

No. 10-7064
(D.C. No. 6:09-CV-00287-RAW)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **MATHESON**, **McKAY** and **EBEL**, Circuit Judges.

---

[*]     After examining appellant's brief and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R.
34.1(G). The case is therefore ordered submitted without oral argument. This
order and judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Paramedic Maurice White, Jr., claims that Oklahoma State Trooper Daniel Martin used excessive force in violation of 42 U.S.C. § 1983 when Trooper Martin attempted to arrest Mr. White during a roadside encounter that led to a physical altercation. Trooper Martin, relying on two videotapes of the incident, moved for summary judgment on the ground he is entitled to qualified immunity from suit. The district court denied the motion, concluding there is a genuine issue of material fact whether Trooper Martin exercised unreasonable excessive force in violation of the Fourth Amendment and that if excessive force was used his conduct violated a clearly established constitutional right. Trooper Martin seeks review through this interlocutory appeal.

The district court's denial of summary judgment was not a final decision, but we have jurisdiction under 28 U.S.C. § 1291 through the collateral order doctrine of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949) to decide whether Trooper Martin's conduct, viewed in the light most favorable to Mr. White as the non-moving party, was objectively unreasonable excessive force and whether it violated a clearly established constitutional right. We affirm.

## I. Background

### A. *Facts*

The facts before the district court came from the video recorder on Trooper Martin's patrol car dashboard, *see* Aplt. App. at 65, and from a witness's cell phone, *id.* at 66. Although depositions were taken of both Mr. White and Trooper

Martin, neither the parties nor the district court relied on them for the facts material to the summary judgment motion on this issue. Neither Mr. White nor Trooper Martin submitted an affidavit to support their positions on summary judgment. As a result, the two videotapes constitute the relevant record.

Neither videotape fully documents the incident in question. Events occur out of the camera's view, the view of Mr. White and Trooper Martin is sometimes blocked by other individuals, and the audio is not always comprehensible when people speak over each other or microphones cut out. The incident can be divided into two halves: before and after Trooper Martin's backup arrives. The first half is only documented by the dashboard camera. The second half takes place around the side of an ambulance, so the dashboard camera provides only audio. Instead, the witness recording documents the second half. Unfortunately, the camera's field of view moves around and is intermittently blocked by other people, so some facts are missing from the record. The following recounts the incident from the videos.

On May 24, 2009, Trooper Martin, while responding to a call at a high rate of speed, approached and then passed the ambulance in which Mr. White was riding. The trooper did not know then that the ambulance, with no lights or siren activated, was transporting a patient. After arriving at the scene of the call and finding his assistance was not needed, Trooper Martin chased down the ambulance and pulled it over. He reportedly stopped the ambulance because the

driver had failed to yield quickly enough to Trooper Martin as he passed the first time. The trooper was also upset because he believed the ambulance driver made an objectionable hand gesture when Trooper Martin passed him.

Upon being pulled over, both Mr. White and the ambulance driver exited the ambulance. Mr. White told Trooper Martin he was in charge of the ambulance and asked him what was going on. Trooper Martin told Mr. White that he wanted to speak to the driver and that Mr. White needed to get back in the ambulance. An agitated Trooper Martin attempted to talk to the driver while Mr. White informed him that the ambulance was transporting a patient. Trooper Martin told Mr. White to get back in the ambulance or he was going to jail. Mr. White told Trooper Martin the ambulance was going to the hospital, and that, if the trooper wanted to arrest him, he could do so at the hospital. Mr. White then started to walk back to the ambulance. The trooper again told the driver to come with him, and Mr. White again intervened, saying "no, no" and stepping between the trooper and the driver.

Trooper Martin then grabbed Mr. White's arm and shoved him against the ambulance, trying to turn him around and arrest him. Mr. White, who is larger than Trooper Martin, backed up against the ambulance and refused to let himself be turned around. This struggle continued, with Trooper Martin telling Mr. White to turn around and that he was obstructing the trooper, and Mr. White refusing to turn around and telling the trooper he was assaulting him. Trooper Martin

-4-

eventually abandoned the effort to arrest Mr. White on his own and returned to his car to call for backup. Trooper Martin subsequently was able to walk the driver to the front of the ambulance and talk to him about failing to yield and also about gesturing as the trooper passed.

After a second trooper arrived, Trooper Martin walked back to Mr. White, who was standing next to the side door of the ambulance, and told him he was under arrest and going to jail. Mr. White turned to the second trooper and stated that he wanted to press charges against Trooper Martin for assaulting a paramedic. While Mr. White was doing this and pointing at Trooper Martin, Trooper Martin grabbed Mr. White's wrist and arm, and unsuccessfully attempted to twist his arm behind his back. Instead, Mr. White took a step toward Trooper Martin, shoved the trooper backward with his arm, made contact with his elbow, and knocked his hat off. Mr. White pulled his arm free and turned around to climb back into the ambulance.

Trooper Martin next grabbed Mr. White from behind. The view from the camera then becomes unsteady as the camera operator moved the camera and another witness stepped in front of the camera operator.[1] A few seconds later

---

[1] It should be noted that throughout this incident there were several witnesses present, in and around the ambulance. Some were clearly family members of the patient in the ambulance, who was evidently being transported because of a possible heart condition. The patient's husband was continuously pleading that he just wanted his wife to get to the hospital.

there is a clear view of Trooper Martin behind Mr. White during a brief break in the struggle. The trooper had his left arm to the side of Mr. White's neck and his right hand on Mr. White's right shoulder and arm. The struggle began again with Mr. White trying to free himself from Trooper Martin's grasp. The video is unclear until the camera steadies again.

At that point, Mr. White had his back against the ambulance and Trooper Martin was standing at Mr. White's side with his hands around Mr. White's throat. Mr. White had stopped struggling. One to two seconds later, looking at the second trooper, Mr. White started pointing at Trooper Martin's hands around his throat. Trooper Martin said "Are you calmed down?" The trooper continued saying this with his hands around Mr. White's throat for the next ten seconds. He then put his left hand on the ambulance, leaving his right hand around Mr. White's throat, and the two began talking again. About ten seconds later, Trooper Martin took his right hand off Mr. White. Within another twenty seconds, Mr. White reentered the ambulance and the troopers walked back to their vehicles. The ambulance drove to the hospital. Mr. White was never taken into custody, nor was he ever charged with a crime.

## B. *District Court Proceedings*

Mr. White alleged claims based on the Fourth Amendment and the First Amendment. First, he claimed that Trooper Martin lacked probable cause to seize him in violation of the Fourth Amendment. Second, he claimed that Trooper

Martin violated the Fourth Amendment by using excessive force in attempting to arrest him. Third, he claimed that Trooper Martin violated the First Amendment by seizing him in response to Mr. White's verbal criticisms. Trooper Martin moved for summary judgment on all claims based on his qualified immunity defense.

The district court granted summary judgment on the unlawful seizure claim, holding that Trooper Martin had probable cause to seize Mr. White under Oklahoma law when Mr. White attempted to block Trooper Martin from approaching and talking with the ambulance driver.[2] The district court also granted summary judgment on the First Amendment claim because the attempted arrest of Mr. White occurred after he obstructed the trooper rather than in response to his verbal criticisms.

The district court denied summary judgment on the excessive force claim. Applying the Supreme Court's "objective reasonableness" analysis from *Graham v. Connor*, 490 U.S. 386 (1989), to the use of force by a law enforcement officer during an arrest, investigatory stop, or other seizure, the court determined that there is a genuine issue of material fact as to whether Trooper Martin used excessive force. The court next addressed whether the constitutional right at

---

[2]    *See* Okla. Stat. tit. 21, § 540:  "Every person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office, is guilty of a misdemeanor."

issue was clearly established.  Relying on our decision in *Casey v. City of Fed. Heights*, 509 F.3d 1278 (10th Cir. 2007), the court concluded that "if it is determined that excessive force was used by defendant in attempting to seize plaintiff, there is a violation of a clearly established right."  Aplt. App. at 130.

## II.  Discussion

Trooper Martin pleaded a qualified immunity affirmative defense to this § 1983 claim and moved for summary judgment on that ground.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982).  To overcome this defense, Mr. White must show that Trooper Martin violated a constitutional right and that the right was clearly established.  *See Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009); *Howards v. McLaughlin*, 634 F.3d 1131, 1140 (10th Cir. 2011); *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010).  The constitutional right at issue is Fourth Amendment protection against the use of unreasonable force upon an individual who has been seized or arrested.  *See Graham*, 490 U.S. at 388-95.

### A.  *Appellate Jurisdiction*

The first question we must address is our jurisdiction to hear this appeal. Under 28 U.S.C. § 1291, we have jurisdiction over "all final decisions" of district courts.  However, the Supreme Court has held that certain orders not constituting final decisions are appealable under § 1291.  In *Cohen*, the Court described a "small class" of district court decisions that are not final judgments but are immediately appealable because they "finally determine claims of right separable

-8-

from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." 337 U.S. at 546; *see also Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985). In *Ashcroft v. Iqbal*, the Court declared that "[a] district-court decision denying a Government officer's claim of qualified immunity can fall within the narrow class of appealable orders despite the absence of a final judgment." 129 S. Ct. 1937, 1945 (2009) (quotation omitted).

Courts applying the collateral order doctrine have held that a defendant may appeal the denial of summary judgment on qualified immunity if the immunity issue can be decided on appeal as a matter of law. *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996); *Mitchell*, 472 U.S. at 530; *Howards*, 634 F.3d at 1138. When a district court's denial of such a motion determines only a question of sufficiency of evidence – "which facts a party may, or may not, be able to prove at trial" – we do not have jurisdiction. *Johnson v. Jones*, 515 U.S. 304, 313 (1995). But we do have jurisdiction when the question is whether, even under plaintiff's version of the facts, the defendant does not have qualified immunity as a matter of law. *See Thomas v. Durastanti*, 607 F.3d 655, 659, 662 (10th Cir. 2010). The *Behrens* Court explained that "summary judgment determinations *are* appealable when they resolve a dispute concerning an abstract issu[e] of law relating to qualified immunity – typically, the issue of whether the federal right

-9-

allegedly infringed was clearly established." 516 U.S. at 313 (quotations and citations omitted).

In this case, the district court, after setting forth its statement of the facts, addressed the two parts of the qualified immunity analysis. It concluded there is a genuine issue of material fact as to whether Trooper Martin acted with unreasonable, excessive force against Mr. White in violation of the Fourth Amendment. It further concluded there was a violation of a clearly established constitutional right.

We have jurisdiction to review the district court's decision provided we limit our review to questions of law. On the question of constitutional violation, our review is limited to whether, in the light of facts most favorable to the plaintiff, Trooper Martin's conduct was objectively unreasonable in violation of the Fourth Amendment. *See Howards*, 634 F.3d at 1139; *Thomas*, 607 F.3d at 659, 662. If the answer is yes, we also have jurisdiction to review whether Trooper Martin's conduct was a violation of a clearly established right. *Behrens*, 516 U.S. at 313.

Trooper Martin focuses his appeal on the second issue, stating in his brief that he "will concede (for the sake of argument in this appeal) that there is a Fourth Amendment right to be free from excessive force when an officer make's (sic) an arrest, but will reserve the 'reasonableness' of his action to the 'clearly established law' issue." Aplt. Br. at 16.

Trooper Martin contends that summary judgment should have been granted on his qualified immunity defense because the facts do not show a violation of a clearly established right. *See Harlow*, 457 U.S. at 818; *Hope v. Pelzer*, 536 U.S. 730, 740-41 (2002). Viewing the videotapes in the light most favorable to the plaintiff, we can reach the abstract question of law on both the constitutional violation and clearly established law issues of qualified immunity and therefore satisfy the *Behrens* test for appellate jurisdiction.

The district court's opinion did not make specific factual findings on the amount and type of force used by Trooper Martin, and did not fully "draw reasonable inferences in the light most favorable to the party opposing summary judgment," *Scott v. Harris*, 550 U.S. at 377, to resolve the qualified immunity issue. We find guidance from *Lewis v. Tripp*, 604 F.3d 1221 (10th Cir. 2010), which reviewed a defendant's appeal from the denial of his summary judgment motion regarding qualified immunity. Drawing from *Johnson v. Jones*, 515 U.S. at 313, we recognized that it is the district court's summary judgment responsibility to determine what facts "a jury could reasonably find from the evidence presented to it by the litigants." *Lewis*, 604 F.3d at 1225. This allows the district and the appellate court to determine "whether those facts suffice to show a violation of law and whether that law was clearly established at the time of the alleged violation." *Id.* If the district court did not adequately develop the factual predicate for a legal conclusion, *Lewis* instructs that "we may look

-11-

behind the order denying summary judgment and review the entire record *de novo* to determine which factual inferences a reasonable jury could and could not make." *Id.*

Accordingly, even if the district court did not "set forth with specificity the *facts . . .* that a reasonable jury could infer from the evidence presented by the parties," *id.* at 1226, we have jurisdiction to "review the entire record, construing the evidence in the light most favorable to . . . the plaintiff, and . . . ask *de novo* whether sufficient evidence exists for a reasonable jury to conclude that" Trooper Martin violated Mr. White's "clearly established rights." *Id.* at 1228.

**B. *Standard of Review***

Having determined that we have appellate jurisdiction, we reach the merits of the district court's denial of summary judgment on qualified immunity. Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Our standard of review generally is de novo. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009), *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). We "construe the record in the light most favorable to the nonmoving party." *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (quotation and citation omitted). In *Howards*, 634 F.3d at 1139, we recently called attention to our statement in *Clanton v. Cooper*, 129 F.3d 1147,

-12-

1153 (10th Cir. 1997), regarding review of the clearly established right issue for

qualified immunity:

> [W]e review whether, under [the plaintiff's] version of the facts, [defendants] violated clearly established law. In making this determination, we must scrupulously avoid second-guessing the district court's determinations regarding whether [plaintiff] has presented evidence sufficient to survive summary judgment. Rather, we review only whether [defendants'] conduct, as alleged by [plaintiff], violated clearly established law.

### C. *Qualified Immunity*

To defeat a qualified immunity defense, Mr. White must show that Trooper

Martin violated his Fourth Amendment right and that the constitutional right was

clearly established at the time of the alleged violation. *Howards*, 634 F.3d

at 1140. In *Pearson v. Callahan*, 555 U.S. 223, —, 129 S. Ct. 808, 818-21

(2009), the Supreme Court held that courts may address the issues of

constitutional violation and clearly established right in any order deemed

appropriate for the particular case.

### 1. Constitutional Violation

On whether there was a Fourth Amendment violation for excessive force,

the district court relied on the three factors identified in *Graham*, 490 U.S. at 397.

First, the court found the relatively minor severity of the alleged crime at the

scene – misdemeanor obstruction of the officer – favored Mr. White in part

because he was trying to transport a patient to the hospital. Second, the court

found Mr. White did not pose a threat. Third, the court noted Mr. White did not

flee but did resist arrest. Although it determined the first two factors favored

Mr. White, the court was less certain about the third factor and concluded that

"in attempting to determine if the defendant's actions of grabbing plaintiff and

placing his hands in a choking position on plaintiff's neck were 'objectively

reasonable,' there appears to be a genuine issue of material fact regarding the

appropriateness of the type and amount of force used." Aplt. App. at 129.
By denying summary judgment on this issue, the district court determined that a

reasonable jury could find Trooper Martin's use of force against Mr. White to be

unreasonably excessive and therefore unconstitutional. *See Casey v. City of Fed.*

*Heights*, 509 F.3d 1278 (10th Cir. 2010).

The videos depict much of the encounter, but they leave open questions

about the degree of Mr. White's resistance to arrest and the timing and extent of

force levied by Trooper Martin. The video evidence in this case stands in

contrast to *Scott v. Harris*, 550 U.S. 372 (2007), on which Trooper Martin relies,

which upheld summary judgment on qualified immunity when a police cruiser

dashboard video showed that the plaintiff's risky maneuvers in a high speed chase

established reasonable justification for the police to ram his car to stop him.

*Id.* at 375-80.[3] Unlike *Scott*, where the Supreme Court determined that the

---

[3]     In this case, as in *Scott*, "[t]here are no allegations or indications that [the] videotape" of the incident "was doctored or altered in any way, nor any contention that what it depicts from what actually happened." *Scott*, 550 U.S. at 378.

material facts were not in dispute, *id.* at 378-79, the district court here determined there is a genuine issue of material fact as to whether Trooper Martin exercised unreasonable excessive force. *See York*, 523 F.3d at 1210 (relevance of *Scott* overstated when audio tape "captured" "only part of the incident").

The videotapes do not depict every moment and do not capture unambiguously Mr. White's resistance, how much force Trooper Martin was using on Mr. White, and whether the force on Mr. White's neck began or continued beyond the point that Mr. White was not resisting arrest. We may infer that Mr. White acted reflexively in response to Trooper Martin's grabbing his wrist and arm. Moreover, inferences that Trooper Martin was choking Mr. White when Mr. White was not resisting, that Mr. White was not a threat to harm anyone or to flee, and that the choking limited Mr. White's ability to breathe are reasonable based on the record. In particular, the video recordings support the inference that Trooper Martin continued to choke Mr. White for ten to twelve seconds after Mr. White had stopped resisting, that during this time Trooper Martin was squeezing hard enough to make breathing difficult for Mr. White, that Mr. White was gasping for air, and that Mr. White was looking at the other trooper on scene and pointing at Trooper Martin's hands around his throat.

We conclude that, based on the facts viewed most favorably to Mr. White, Trooper Martin's conduct was objectively unreasonable under *Graham v. Conner* and that the district court was correct in determining that a reasonable jury could

-15-

conclude that Trooper Martin violated Mr. White's Fourth Amendment right against the use of unreasonable excessive force.

### 2. Clearly Established Right

As the Supreme Court recently explained:

> A Government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *See ibid.*; *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

*Ashcroft v. al-Kidd*, — S. Ct. —, WL 2110110 (May 31, 2011). When the district court denied summary judgment on the issue of violation of a clearly established right, it relied on our decision in *Casey*, in which we said, "The more obviously egregious conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish a violation." 509 F.3d at 1298 (quotation omitted). The district court explained that *Casey* recognized "a right to be arrested or seized without the use of excessive force" and, therefore, "if it is determined that excessive force was used by defendant in attempting to seize plaintiff, there is a violation of a clearly established right." Aplt. App. at 130.

Although we ultimately agree with the district court's decision on this issue, additional analysis is needed. The district court's foregoing statement

-16-

conflates the issues of whether there was a violation of a constitutional right and whether that right was clearly established at the time of the violation. Even when conduct is unreasonable under the Fourth Amendment, the defendant may still have a qualified immunity defense on whether there was a violation of a clearly established constitutional right at the time of the incident. *See Malley v. Briggs*, 475 U.S. 335, 343-46 (1986). Accordingly, we must examine this issue further.

Whether a right is clearly established turns on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson*, 555 U.S. at —, 129 S. Ct. at 818. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010). "We cannot find qualified immunity whenever we have a new fact pattern." *Casey*, 509 F.3d at 1284. Thus, a factually identical case is not required, but "it must still be apparent to a reasonable officer in light of pre-existing law that his conduct was unlawful." *Thomas*, 607 F.3d at 669.

The district court and Mr. White rely on our *Casey* decision. Mr. Casey sued under 42 U.S.C. § 1983, alleging that his Fourth Amendment protection against excessive force was violated when two police officers grabbed, tackled, and tasered him after he left a courthouse with a file that was not supposed to

leave the building. The plaintiff attempted to walk away from the officers but otherwise did not resist. Employing the *Graham* factors and viewing the facts in the light most favorable to the plaintiff, the court determined that Mr. Casey had committed at most a misdemeanor in a harmless manner, that the officers had no reason to believe he constituted a threat to anyone's safety, and that Mr. Casey was not actively resisting arrest or attempting to evade arrest by flight. The court concluded that a "reasonable jury could find [the officer's] use of force to be excessive and therefore unconstitutional." 509 F.3d at 1283; *see also Weigel v. Broad*, 544 F.3d 1143, 1152-53 (10th Cir. 2008) (finding it significant that force was applied after resistance to arrest ceased).

Trooper Martin asks us to consider *Pride v. Does*, 997 F.2d 712 (10th Cir. 1993). In that case, Mr. Pride brought an excessive force claim. He had been arrested at the state fair for disorderly conduct and taken to the highway patrol office. The trooper at the office attempted to question him and eventually "applied force to his neck." *Id.* at 714. We found this conduct objectively reasonable because Mr. Pride had been involved in an altercation leading to his arrest, the trooper had been told that Mr. Pride had slapped a barmaid at a beer tent, and the trooper observed that Mr. Pride was intoxicated and combative. In her uncontroverted affidavit, the trooper said that in her experience intoxicated people frequently become violent and that intoxicated drivers had attacked her on four previous occasions during an attempted arrest. She testified that Mr. Pride

-18-

was acting in a threatening manner and had "started out of his chair" at her with an intense and threatening expression. *Id.* at 717 (quotation omitted).

The *Casey* decision is not only more recent than *Pride*, it also is more on point. *Pride* involved a disorderly conduct arrestee who was recently involved in assaultive behavior and who was intoxicated and acting in a threatening manner. The trooper had previous experience with intoxicated individuals who had attacked her in the arrest context. In this case, like *Casey*, the attempted arrest was initially based on probable cause regarding Mr. White's misdemeanor conduct in his efforts to avoid delay in taking a patient to the hospital. Again, like Mr. Casey, his conduct did not threaten the safety of others. Unlike Mr. Pride, Mr. White had not been arrested and was not intoxicated and had not been involved in assaultive conduct. Also, unlike the trooper in *Pride*, Trooper Martin has not provided an affidavit concerning his force on Mr. White's neck. Finally, it is not clear whether Mr. White resisted arrest more than Mr. Casey or how severe was the pressure on his neck, but it is here where reasonable inferences in favor of the plaintiff come into play at summary judgment.

As noted above, the video evidence allows inferences in favor of Mr. White that he was choked when not resisting, was not a threat, was not attempting to flee, and was seeking assistance from the other trooper. Once these inferences are made, and taking into account the other evidence, the violation of Mr. White's Fourth Amendment right against excessive force is clearly established for

-19-

purposes of denying the summary judgment motion. Whether these inferences will hold up following additional discovery or at trial will be determined in further proceedings in the district court.

### III. Conclusion

For the foregoing reasons, we affirm the district court's denial of summary judgment.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge